**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2995
_____


UNITED STATES OF AMERICA


v.


TIMOTHY RIDDY,
                    Appellant

_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(District Court No. 3:24-cr-00265-001)
District Judge: Honorable Joseph F. Saporito, Jr.

_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 30, 2026

(Filed: July 1, 2026)


Before: SHWARTZ, PHIPPS, RENDELL, *Circuit Judges*.

Jason F. Ullman
OFFICE OF FEDERAL PUBLIC DEFENDER
100 Chestnut Street
Suite 306
Harrisburg, PA 17101

*Counsel for Appellant*

Carlo D. Marchioli
OFFICE OF UNITED STATES ATTORNEY
MIDDLE DISTRICT OF PENNSYLVANIA
Sylvia H. Rambo United States Courthouse
1501 N 6th Street, 2nd Floor
P.O. Box 202
Harrisburg, PA 17102

Jeffery F. St. John
OFFICE OF UNITED STATES ATTORNEY
235 N Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, *Circuit Judge*.

In this appeal, Timothy Riddy argues that the District Court erred in concluding that he was a "manager" or "supervisor" of the drug conspiracy and thus erred in applying the two-level enhancement under U.S.S.G. § 3B1.1(c) in

crafting his sentence. In applying the enhancement, the District Court turned to the Sentencing Guidelines' commentary for guidance. Under our precedent, however, courts may defer to commentary only when the text of a particular Guideline is genuinely ambiguous. *United States v. Nasir*, 17 F.4th 459, 471 (3d Cir. 2021) (en banc). The District Court erred in failing to conduct this analysis, but as we explain below, the District Court would have reached the same conclusion even if it had. Therefore, the legal error was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Accordingly, we will affirm Riddy's judgment of sentence.

## I.

In April 2024, sources informed DEA investigators that Riddy was distributing cocaine base with Steven Brown, his codefendant, in Monroe County, Pennsylvania. Riddy often requested payments from drug customers via Cash App, an electronic payments service. Upon receiving payment, Riddy either conducted drug transactions himself or sent Brown to do so for him. Cash App records revealed approximately $180,000 in payments. Between May and September 2024, agents arranged controlled purchases with Riddy and Brown, during which Brown drove Riddy's vehicle for three of the transactions. Agents executed a search warrant at Riddy's residence and seized fifty-seven grams of cocaine, drug paraphernalia, a drug ledger, financial transaction records, and over $2,000 in cash.

In April 2025, Riddy was charged in a federal superseding indictment with several drug related counts. In June 2025, Riddy pled guilty to Count One, conspiracy to

distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and § 846. The PSR recommended a two-level leadership enhancement under U.S.S.G. § 3B1.1(c) based on a finding that Riddy was a "manager" or "supervisor" of criminal activity. His resulting guideline imprisonment range was 120 to 135 months, which incorporated the statutorily required minimum sentence of ten years mandated by § 841(b)(1)(A). Without the enhancement, Riddy would have been eligible for the safety valve provision by which the District Court could have sentenced Riddy below the statutory minimum, pursuant to 18 U.S.C. § 3553(f). But the enhancement rendered him ineligible for a sentence below 120 months. *Id.* § 3553(f)(4). Riddy objected.

At sentencing, the District Court looked to the Commentary for "some guidance," specifically looking at the factors enumerated by Application Note 4. (App. 124.) The District Court concluded that Riddy qualified as a "manager" or "supervisor," and thus applied the enhancement. The District Court sentenced him to 120 months' imprisonment. Riddy appealed, challenging only the District Court's application of the two-level leadership enhancement under U.S.S.G. § 3B1.1(c).

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review the District Court's interpretation of the Sentencing Guidelines de novo. *United States v. McIntosh*, 124 F.4th 199, 205 (3d Cir. 2024). We review the District Court's

4

factual findings in support of the enhancement under the clear error standard. *See United States v. Miller*, 172 F.4th 242, 247 (3d Cir. 2026).

## III. DISCUSSSION

For many years, we treated the Sentencing Commission's commentary as authoritative and gave it controlling weight unless it was "inconsistent with, or a plainly erroneous reading of, that [G]uideline." *United States v. Metro*, 882 F.3d 431, 437 (3d Cir. 2018) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)). However, in *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019), the Supreme Court held that courts should defer to agency interpretations of their own regulations only where the regulation is genuinely ambiguous. Thereafter we applied that holding in *United States v. Nasir*, 17 F.4th 459, 471 (3d Cir. 2021), and announced a three-step test to decide whether to consult with, and defer to, a particular provision of the Sentencing Guidelines commentary. First, we ask whether the Guideline is "genuinely ambiguous" after "carefully consider[ing] the text, structure, history, and purpose." *Id.* (quoting *Kisor*, 588 U.S. at 575 (internal quotation marks omitted)). If it is not, our inquiry ends, and we apply the plain text of the Guideline. *Id.* If it is genuinely ambiguous, we proceed to step two and ask if the commentary is "reasonable," *Kisor*, 588 U.S. at 575, meaning the commentary "clarif[ies] the ambiguity" identified in step one without "chang[ing] the meaning of the text." *United States v. Chandler*, 104 F.4th 445, 450 (3d Cir. 2024). If the commentary is reasonable, we proceed to step three and consider "whether the character and context of the agency interpretation entitles it to controlling weight." *Nasir*, 17 F.4th at 471 (quoting *Kisor*, 588 U.S. at 576 (internal quotation marks omitted)). If the commentary's

interpretation "implicate[s] [the Commission's] substantive expertise[,]" "reflect[s] fair and considered judgment," and is the agency's "official position," it is entitled to controlling weight, and we will defer to it. *Id.* (quoting *Kisor*, 588 U.S. at 577, 579).

## A. Interpretation of the Manager-Supervisor Enhancement in Guideline § 3B1.1(c)

The District Court erred in deferring to the Commentary without conducting the *Nasir* analysis. It should have begun, as we do now, with whether the terms "manager" or "supervisor" are "genuinely ambiguous."

Section 3B1.1(c) provides: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in subsection (a) or (b), increase by 2 levels." U.S.S.G § 3B1.1(c). Neither that subsection nor any other part of the Guidelines defines the terms "manager" or "supervisor." Because those words are not terms of art, they take on their "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The analysis we conducted in *Adair* instructs us as to how we should analyze the words "manager" or "supervisor." *United States v. Adair*, 38 F.4th 341 (3d Cir. 2022). There, we consulted dictionaries from the time the Guideline was promulgated to determine the meaning of "leader" or "organizer." *Id.* at 351. Here, the term "manager," at the time of promulgation, meant a person with oversight over operations or other persons. *See id.* at 352 n.16 (citing *Webster's Third New International Dictionary* 1372 (1986) (hereinafter '*Webster's Third*') ("[A] person that conducts, directs, or supervises something."); *Manager*, *Black's Law*

*Dictionary* (6th ed. 1990) ("A person chosen or appointed to manage, direct, or administer the affairs of another person or of a business, sports team, or the like.")). Similarly, the term "supervisor" also referred to a person with oversight over operations or other persons. *See id.* at 352 n.17 (citing *Webster's Third* 2296 ("[O]ne that supervises a person, group, department, organization, or operation."); *Supervisor, Black's Law Dictionary* (6th ed. 1990) ("In a broad sense, one having authority over others, to superintend and direct.")).

Also, as in *Adair*, we should examine other textual aspects of § 3B1.1(c) and the Guideline's structure in considering the meaning of "manager" or "supervisor." In the text of the Guideline, those terms are preceded by the indefinite article, "an." That suggests that § 3B1.1(c) "is not seeking to identify a single person as [a manager or supervisor]—as would be the case if the Guideline included a definite article to read '*the* [manager or supervisor].'" *Adair*, 38 F.4th at 351. Instead, § 3B1.1(c) "allows the possibility that multiple persons engaged in the same criminal activity could qualify as" managers or supervisors. *Id.* The terms are joined by the conjunction "or," "which most commonly functions to indicate either 'an alternative between different or unlike things, states, or actions' or a 'choice between alternative things, states, or courses.'" *Id.* (footnotes omitted). But "or" can also have a different meaning—it can indicate "the synonymous, equivalent, or substitutive character of two words or phrases," or even a "correction or greater exactness of phrasing or meaning." *Id.* at 351–52 (internal quotations and citations omitted). Here, reading the provision in its ordinary meaning, the "or" conjunction functions to link similar terms. *See id.* at 353 ("[I]n subsection (b), the 'or' conjunction links similar terms, 'manager' and 'supervisor.'").

7

Turning to the structure, the Guideline provides three distinct enhancements for having an aggravating role in a criminal offense. Subsection (a) contains the most severe of those enhancements, the four-point increase for organizers and leaders of "criminal activity that involved five or more participants or was otherwise extensive." *See* U.S.S.G. § 3B1.1(a). Subsection (b) provides a three-point increase for being "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." *Id.* § 3B1.1(b). Subsection (c) provides a two-point enhancement for "an organizer, leader, manager, or supervisor in any criminal activity other than described in subsections (a) or (b)." *Id.* § 3B1.1(c). "The greater enhancement for organizers and leaders in subsection (a) suggests that they have greater culpability than managers or supervisors." *Adair*, 38 F.4th at 352 (footnotes omitted). That structural difference provides insight into distinguishing "manager" or "supervisor" from the terms "organizer" or "leader." To be less culpable than an organizer or leader, a manager or supervisor requires a lesser degree of operational control over the criminal activity than that of an organizer or leader. *See id*. at 352–53.

Next, when considering the purpose for the aggravating-role enhancement, we turn to the background commentary for Guideline § 3B1.1, which we may consider without engaging in the *Kisor* analysis. *See id.* at 347–48 ("The paradigm applies only to the Commission's interpretive commentary, not its commentary related to either background information or circumstances that may warrant a departure from a [G]uideline."). The Commission intended that the offense level "should increase with both the size of the

organization and *the degree of the defendant's responsibility*." U.S.S.G. § 3B1.1, Background (emphasis added). To effectuate that purpose, "managers" and "supervisors" of criminal activity must sit below "organizers" and "leaders" in the hierarchy of responsibility.

The history of Guideline § 3B1.1 does little to clarify the meaning of "manager" or "supervisor." The Commission has only made one non-substantive amendment to § 3B1.1 since its promulgation in 1987. *See* U.S.S.G. App. C Amend. 831 (Nov. 1, 2024) (inserting the word "subsection" in § 3B1.1(c)). Accordingly, there is no basis to consider revisiting the dictionary definitions of "manager" or "supervisor" from the time of the promulgation.

In sum, the text, structure, purpose and history of Guideline § 3B1.1(c) compel the conclusion that the terms "manager" and "supervisor" are not genuinely ambiguous. The common ordinary meanings of those terms at the time of promulgation together with the structure and purpose of § 3B1.1 lead to contextually appropriate definitions of those terms. As used in § 3B1.1(c), a "manager" or a "supervisor" is a person with oversight over operations or other persons. Without any genuine ambiguity, the factors listed under Application Note 4 should not be afforded controlling weight. Rather, a defendant who meets the definition of a "manager" or "supervisor" qualifies for the two-level enhancement.

## B. Application to Riddy

Applying the post-*Kisor*, post-*Nasir* understanding of § 3B1.1(c) to the District Court's factual findings, which are not clearly erroneous, reveals that Riddy qualified for the two-level

enhancement as a manager or supervisor. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (explaining that clear error requires a "definite and firm conviction that a mistake has been committed" (citation omitted)). The record contains evidence that Riddy had oversight over both Brown and the drug operations. Riddy did not object to the statement that "[u]pon receiving payment [from customers], Timothy Riddy either conducted drug transactions himself or sent Steven Brown to do it for him." (PSR ¶ 10; *see also* App. 70 (uncontested factual basis for plea: "Mr. Riddy would distribute crack cocaine himself to several customers, and Steven Brown would also distribute crack on his behalf.")).) Brown drove in Riddy's car (despite not having a driver's license) to deliver the drugs. Riddy controlled the Cash App. Further, the text messages provide additional evidence that Riddy exercised control by deciding whether a customer could be fronted drugs on credit and by confirming whether a customer paid before Brown could deliver the drugs. This is sufficient evidence of Riddy's oversight over Brown and the drug operations to qualify him as a manager or supervisor, and thus, the District Court's reliance on Application Note 4 was harmless error.

IV.

In light of the above, we will affirm the District Court's judgment of sentence.